# Exhibit A

Page 58

1 of me now. He's got my arm and trying to put
2 the -- put my other arm behind my back. And I'm
3 steady telling him, like, I didn't do anything,
4 I didn't do anything, please, please, let me go.
5 And that's when Officer Looney came around. And
6 he put his knee into, like, like, the back of my
7 neck area right here (indicating), and helped
8 Officer Legenza put my other arm behind my back.
9 And that's when they put the cuffs on me.
10    Q   Okay. Were your arms flailing around?
11    A.   Was they like, waving, like this
12 (demonstrating), both?
13    Q   Flailing. Do you understand what that
14 word means, flailing?
15    A.   No, not really.
16    Q   Okay. Well, you took a plea in this
17 case; right?
18    A.   Yes.
19    Q   Did you understand what you were pleading
20 guilty to when you said that you were pleading
21 guilty to battery --
22    A.   Yes, misdemeanor battery. Like, I
23 touched him like this (demonstrating), and he
24 didn't want to be touched.

Page 59

1    Q   Okay. And in that plea they used the
2 word "flailing?"
3    A.   Yeah. I probably was moving my hands
4 accidentally, telling them, like, I didn't do
5 anything, and I didn't do anything. And that's
6 when Officer -- that's when Officer Looney came
7 around. Because one of my arms was still free,
8 and it was my left arm that was still free. So
9 that's what -- I guess what provoked Officer
10 Looney to come back around because his partner
11 needed help.
12    Q   Okay. So describe for me at what point
13 in time your left arm was moving around before
14 Officer Looney came. Was that when you were on the
15 ground --
16    A.   Yes.
17    Q   -- or was that before that?
18    A.   Yes, that's when I was on the ground.
19 That's when I was on the ground asking --
20 asking -- asking Officer Legenza to let me go
21 because I didn't do anything, I didn't do
22 anything. He's hurting me; I don't get any drugs
23 or a gun.
24    Q   Okay.

Page 60

1    A.   So that's when -- that's when --
2       When I was on the floor, that's
3 when my arms was flailing, flailing, flailing
4 around --
5    Q   Okay. So I just want to --
6    A.   -- and I kept trying to move. So...
7    Q   So I want to make sure that I understand
8 what you're saying.
9       So Officer Legenza gets out of the car
10 and tells you to put your hands up?
11    A.   Yes.
12    Q   And you put your hands up immediately?
13    A.   Yes.
14    Q   You approach the car?
15    A.   Yes.
16    Q   And Officer Legenza immediately grabs
17 your right arm and twists it and puts it behind
18 your back; is that correct?
19    A.   Yes. Well, see I was on the --
20       He pushes me on the car first, and
21 then he grabbed my arm and puts it behind my
22 back.
23    Q   He pushes you onto the car when your
24 hands are up?

Page 61

1    A.   Yes.
2    Q   Okay. And where --
3       Is Officer Legenza standing behind you
4 when he pushes you up against the car?
5    A.   Yes.
6    Q   And he pushes you up against the hood of
7 the car?
8    A.   Yes.
9    Q   Okay. And then he grabs your right arm
10 and twist it behind your back; is that correct?
11    A.   Yes.
12    Q   And then Officer Legenza takes you down
13 to the ground; correct?
14    A.   Yes.
15    Q   Do your knees hit the ground first before
16 your chest?
17    A.   Nawl. Nawl. My body -- nawl. I didn't
18 fall on my knees like this (demonstrating). He
19 slung me, like, whole body -- whole body. Didn't
20 no legs touch the floor, didn't no knees touch the
21 floor. My whole body just hit the floor at the
22 same time. Because how heavy he is, he fell on
23 top of me, too, at the same time.
24    Q   Okay. And then as you were on the

Page 62

1  ground, your left arm is flailing around and --
2  A.  Yes --
3  Q  -- and hitting Officer Legenza --
4  A.  Yes. Yes, my left --
5  Q  -- is that correct?
6      Let me get my question out.
7      Your left arm is flailing on the
8  ground, and it hit Officer Legenza when you were on
9  the ground. Is that correct?
10 A.  I won't say --
11     MR. NAGELBERG: He didn't use the
12 expression "hit."
13     THE WITNESS: I wouldn't -- I wouldn't
14 say hit, I was --
15     MS. FRONCZAK: Well, I'm just going to
16 object to you using speaking objections. You
17 can make objections for the record. But, you
18 know, obviously he's here to testify --
19     MR. NAGELBERG: No. My objection is
20 you're mischaracterizing what he's saying.
21     MS. FRONCZAK: Okay.
22 BY MS. FRONCZAK:
23 Q  Did I mischaracterize what you said?
24 A.  Yes, because I did not hit Officer

Page 63

1  Legenza.
2  Q  Okay. Well, your -- your arm -- left arm
3  was flailing; is that correct?
4  A.  Yes.
5  Q  And it came into contact with Officer
6  Legenza?
7  A.  Yes. It probably touched Officer
8  Legenza.
9  Q  Well, it did because you pled guilty to
10 battery; right?
11 A.  Yes.
12 Q  Okay. So your left arm comes into
13 contact with Officer Legenza; is that correct?
14 A.  Yes.
15 Q  And then you said Officer Looney had to
16 come around because of your -- your -- your left --
17 your left arm was flailing around?
18 A.  Yes. It was, like --
19     Because he came around because I
20 was squirming trying to get them off of me.
21 Q  Okay.
22 A.  Because Officer Legenza was hurting me.
23 So that's why my arms was flailing, because
24 Officer Legenza was hurting me and I wanted to

Page 64

1  know what I did wrong.
2  Q  Okay. How was Officer Legenza hurting
3  you at this point?
4  A.  Because he had slammed me on my back --
5  I mean, slammed me on my stomach, and he's on top
6  of my back with my arm behind me, moving my arm
7  twisting it like this (demonstrating).
8  Q  Okay. He was twisting your right arm?
9  A.  Twisting my right arm.
10 Q  Okay. Was he doing anything else to you
11 besides twisting your right arm when you said that
12 Officer Legenza was hurting you?
13 A.  He was on my back like this
14 (demonstrating), like, trying to keep me from
15 moving, like, putting all his pressure down on my
16 back.
17 Q  Okay.
18 A.  Yes, he was hurting me.
19 Q  Okay. So other than your right arm being
20 twisted behind you and he was putting pressure on
21 you, where was the pressure hurting you?
22 A.  My back --
23 Q  Okay.
24 A.  -- right here (indicating), where I was

Page 65

1  recently shot at, and my stomach, and my abdomen
2  right here (indicating).
3  Q  Okay. And so Officer Looney comes
4  around?
5  A.  Yes.
6  Q  And he tries to restrain you as well?
7  A.  Yes.
8  Q  And what does Officer Looney have to do
9  or -- strike that.
10     What does Officer Looney do to
11 restrain you?
12 A.  He grabs my other arm and he puts it
13 behind my back as he got his, like, his knee
14 planted into, like, here (indicating), in the back
15 of my neck.
16 Q  Okay. So you're pointing to the area in
17 the back of your neck where his knee was
18 positioned?
19 A.  Yes, where his knee was positioned.
20 Q  Did any officers --
21     Did either Officer Legenza or Officer
22 Looney strike you? Hit you?
23 A.  No.
24 Q  Okay. So they were just trying to hold

Exhibit B

```
STATE OF ILLINOIS      )
                       ) SS.
COUNTY OF C O O K      )
```

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT-CRIMINAL DIVISION

```
THE PEOPLE OF THE        )
STATE OF ILLINOIS,       )
                         )
          Plaintiff,     )
                         )   CHANGE OF PLEAS
vs.                      )
                         )   Nos. 13 CR 11398-01
ALONZO MOSLEY,           )        10 CR 00016-01
                         )
          Defendant.     )
```

REPORT OF PROCEEDINGS of the hearing had before The Honorable THOMAS M. DAVY, Judge of said Court, on the 3RD day of February, 2014.

APPEARANCES:

    HON. ANITA M. ALVAREZ,
        State's Attorney of Cook County, by:
    MR. DAVID HERRERA,
        Assistant State's Attorney,

        appeared for the Plaintiff;


    MR. SHELDON BART NAGELBERG,

        appeared for the Defendant.

Judy A. Lucas, CSR-084-001463
Official Shorthand Reporter
10220 South 76th Avenue
Bridgeview, Illinois 60455

- 1 -

1   THE CLERK: Alonzo Mosley.

2   MR. NAGELBERG: Sheldon Nagelberg appearing for
3   Mr. Mosley.

4   Your Honor, there is contemplation of a resolution
5   by way of a plea agreement, and in that light we would be
6   requesting a 402 conference, if you wish to admonish
7   Mr. Mosley.

8   THE COURT: Mr. Mosley, your lawyer has told me here
9   may be a resolution, that you and he may make an agreement
10  with the State's Attorneys' Office as far as disposing of
11  either or both of these cases, and that is your request,
12  that I engage in an conference with your lawyer and with the
13  State's Attorney.

14  The purpose of that conference would be to find
15  out some of the facts about the cases, about this case,
16  these cases, and of your background, meaning I would hear
17  things that I would not otherwise know except for the
18  conference.

19  I would then tell your lawyer and the State's
20  Attorney whether or not I will go along with that agreement,
21  or what sentence I would recommend.

22  So do you understand that is what the purpose of
23  the conference is?

24  MR. MOSLEY: Yes, sir.

1 THE COURT: Do you also understand, sir, that you do
2 not have to plead guilty in either or both of these cases
3 because of this conference. This case can still go to
4 trial, either by way of a bench trial or a jury trial. In
5 fact, one had been set today for a jury trial.
6 But I would, if they are not resolved, I will
7 still be the Judge to preside over those trials, even though
8 I would have heard certain facts about the facts of the
9 case, and the facts about your background that I wouldn't
10 otherwise know.
11 Do you understand that, sir?
12 MR. MOSLEY: Yes, sir.
13 THE COURT: And do you want me to hold this conference
14 with your lawyer?
15 MR. MOSLEY: Yes, sir.
16 THE COURT: All right, I'll pass the case for the
17 conferences, Mr. Mosley, and then we'll recall the matter.
18 MR. MOSLEY: Okay.
19 (WHEREUPON, the Court gave attention to
20 other matters on the calendar, after which
21 the following proceedings were had:)
22 THE COURT: Alonzo Mosley, in custody.
23 MR. NAGELBERG: Sheldon Nagelberg for Mr. Mosley,
24 coming back to you after a 402 conference, and based on the

- 3 -

1 product of that conference, which I relayed to my client, he
2 has executed a jury waiver as to both matters and waives
3 pre-sentence investigation subject to the Court's approval.
4     THE COURT: And the State on the 16 case, you have a
5 motion to amend Count 2.
6     MR. HERRERA: Yes, Judge, motion to amend Count 2,
7 Judge, language to reflect 720 ILCS 12-3(a)(2), Judge, a
8 misdemeanor.
9     THE COURT: Any objection to that amendment?
10     MR. NAGELBERG: No objection, waive re-swearing and
11 re-affirmation.
12     THE COURT: Mr. Mosley, it is my understanding, sir,
13 that you are going to be entering pleas of guilty in each of
14 these cases.
15     In the 10 CR 16 case, that now charges the
16 misdemeanor offense of battery, alleging that you made
17 physical contact of an insulting or provoking nature to an
18 individual by the name of Edward Agenza (phonetic), that
19 occurred on the 5th of December of 2009.
20     And also that you are going to be entering a plea
21 of guilty to Count 5 in case 13 CR 11398 that charges the
22 offense of aggravated unlawful use of a weapon that occurred
23 on the 14th of May, 2013, alleging possession of a handgun
24 when you did not have a valid firearm owner's identification

1 card.

2 Do you understand that that is what you are now
3 being charged with in these two cases, sir, and is that what
4 you are pleading guilty to?

5 MR. MOSLEY: Yes, sir.

6 THE COURT: You understand, Mr. Mosley, by entering the
7 pleas of guilty at this time that there will not be trials
8 in either of these cases. These are bench trial, which
9 would be trials before me, or jury trials, which would be
10 trials before twelve person selected by you and your lawyer,
11 and by the Assistant State's Attorneys. The jurors would
12 be the ones who would listen to the evidence, hear the
13 arguments of the lawyers, hear my instructions on the law,
14 and the jurors would be the ones would be the ones to decide
15 if the State had proven you guilty beyond a reasonable
16 doubt.

17 Do you understand that is what a jury trial is?
18 MR. MOSLEY: Yes, sir.

19 THE COURT: And these are your signatures on the jury
20 waiver forms, Mr. Mosley?

21 MR. MOSLEY: Yes, sir.

22 THE COURT: You also understand, sir, there will not be
23 trial in either of these cases, you won't be seeing any of
24 the States' witnesses who would otherwise be testifying

1 against you, your lawyer won't be cross examining any
2 witnesses, he won't be calling any witnesses to testify on
3 your behalf, and you would also not be testifying yourself.
4 Do you understand that?
5 MR. MOSLEY: Yes, sir.
6 THE COURT: Do you also understand, sir, that if you
7 did go to trial and if you decided not to testify at trial,
8 that no one could hold that fact against you. So, in other
9 words, neither I nor a jury could say that we were going to
10 find you guilty just because you didn't testify.
11 So as far as the amended charge of battery, as I
12 said, that is now a Class A misdemeanor.
13 Class A misdemeanors are punishable by up to 364
14 days in the Cook County Department of Corrections.
15 You could also receive a period of up to two years
16 probation, be fined up to twenty-five hundred dollars, and
17 be given up to six months in the Cook County Department of
18 Corrections as a condition of probation.
19 On the charge of aggravated unlawful use of
20 weapons in Count 5 is a Class 4 felony. Class 4 felonies
21 are punishable by one to three years in the Illinois
22 Department of Corrections, followed by a one year period of
23 mandatory supervised release.
24 On a Class 4 felony it could be probation for a

1  period of up to thirty months, with a fine of up to
2  twenty-five thousand dollars, and up to six months in the
3  Cook County Department of Corrections as a condition of
4  probation.
5      Sir, do you understand that those are the possible
6  sentencing ranges?
7      MR. MOSLEY:   Yes, sir.
8      THE COURT:  Is anyone forcing you in any way to get you
9  to enter this plea of guilty, sir?
10     MR. MOSLEY:   No, sir.
11     THE COURT:  Other than my promise I will go along with
12 the agreement, and on the amended charge of battery, I would
13 sentence you up to 364 days in the Cook County Department of
14 Corrections, time considered served by actual time in
15 custody of 286 days, and then on the aggravated unlawful use
16 of weapon charge, in return for the State's dismissing the
17 counts relating to the possession of a firearm by a street
18 gang member, which would be a non-probationable Class 2, a
19 three to ten year sentence in the Illinois Department of
20 Corrections, that I would sentence you to three years
21 Illinois Department of Corrections, followed by a one year
22 period of mandatory supervised release, day for day time
23 credit of 286 days, has anyone made other guarantees or
24 promises to get you to enter this plea of guilty?

```
 1        MR. MOSLEY:  No, sir.
 2        THE COURT:  Have you had the opportunity to speak to
 3   your lawyer, and did he tell you what I would sentence you
 4   to?
 5        MR. MOSLEY:  Yes, sir.
 6        THE COURT:  Do you have any questions, Mr. Mosley?
 7        MR. MOSLEY:  No, sir.
 8        THE COURT:  Mr. Nagelberg, you have had the opportunity
 9   to speak to your client, and you feel he understands the
10   ramifications of the plea of guilty?
11        MR. NAGELBERG:  I do, your Honor.
12        THE COURT:  And the State also, there would be a
13   stipulation that would be entered in terms of the 10 CR 16
14   case?
15        MR. HERRERA:  Yes, Judge.
16            I just want to make it clear, for the record,
17   there is a stipulation of the testimony.
18            Judge, it is stipulated by and between the parties
19   that if called to testify Officer Edward Legenza,
20   Star No. 6129, and Officer Looney, Star No. 8706, would
21   testify that they were on duty and working for the City of
22   Chicago Police Department in full police uniform.
23            Two:  The officers were in an unmarked City of
24   Chicago police vehicle and were on patrol on December 5th,
```

- 8 -

1  2009, in the vicinity of 5510 South Damen Avenue, the City
2  of Chicago, County of Cook, Cook County, Illinois, at
3  approximately 11:28 a.m.
4         Three:  Both Officer Legenza, Star No. 6129, and
5  Officer Looney, Star No. 8706, would identify in open court
6  the Defendant, Alonzo Mosley, as an individual they observed
7  at the mouth of the alley at the stated location.
8         Four:  It is stipulated by and between the
9  parties that Officer Legenza, Star No. 6129, and Officer
10 Looney, Star No. 8706, decided to conduct a field interview,
11 at which time they exited their vehicle, approached the
12 defendant, and announced their office.
13        Five:  Upon approaching the defendant, the
14 defendant began to flail his arms in protest to the field
15 interview and consequently made physical conduct of an
16 insulting and provoking nature to PO Edward Legenza,
17 Star No. 6129, while Sergeant Legenza was engaged in the
18 performance of his authorized duty as such an officer in
19 violation of Chapter 720, Act 5, Section 12-3(a)(2).
20        So stipulated?
21    MR. NAGELBERG:  Yes, I stipulate that that would be
22 the testimony of Officer Legenza and Officer Looney.
23    MR. HERRERA:  Judge, could I ask that the defendant
24 also be sworn in and stipulate to this?

 1   MR. NAGELBERG: I have no objection. He would agree
 2 that that would be the testimony.
 3   THE COURT: Mr. Mosley, raise your right hand to be
 4 sworn.
 5                    (The oath was thereupon duly
 6                     administered to the Defendant
 7                     by the Clerk.)
 8   THE COURT: All right, Mr. Mosley, you are also
 9 swearing, or agreeing, that would be the testimony that
10 would be presented by the States' witnesses, is that
11 correct?
12   MR. MOSLEY: Yes.
13   THE COURT: All right, you may put your hand down.
14       At this time I find that the Defendant, Alonzo
15 Mosley, knows and understands his rights, knows and
16 understands the possible penalties.
17       I find he is entering the plea knowingly and
18 voluntarily.
19       I further find that based on the factual matters
20 that was presented to me in the course of the conference as
21 to the State's evidence in each of these cases, as well as
22 my review of the police reports and transcripts in both
23 cases, as well the stipulation in case 10 CR 16, that there
24 would be a sufficient factual basis for me to accept the

- 10 -

```
 1  plea in each of the cases.
 2          Accordingly, I will accept the pleas and I will
 3  enter judgments on the findings.
 4          Mr. Mosley, these are also you signatures on what
 5  are called the pre-sentence waiver forms, sir?
 6      MR. MOSLEY:   Yes, sir.
 7      THE COURT:  You understand, sir, that that gives up
 8  your right to have the probation department conduct an
 9  investigation into your background, instead I will sentence
10  you based on what your lawyers and the State's Attorney have
11  told me what your background is?
12      MR. MOSLEY:   Yes, sir.
13      THE COURT:  State, any further aggravation?
14      MR. HERRERA:  No, Judge.
15      THE COURT:  Anything further in mitigation?
16      MR. NAGELBERG:  Rest on the conference, your Honor.
17      THE COURT:  And Mr. Mosley, is there anything you wish
18  to say before I sentence you, sir?
19      MR. MOSLEY:   Thank you, sir.
20      THE COURT:  At this time, Mr. Mosley, considering the
21  facts of this case, considering the lack of prior felony
22  background, all other factors in aggravation and mitigation,
23  I will go along in the agreement, and in case 10 CR 16 I
24  will sentence you to 364 days Cook County Department of
```

1  Corrections, time considered served by actual time of 286
2  days.
3  　　　　　And in case 13 CR 11398 I will sentence you to
4  three years in the Illinois Department of Corrections,
5  followed by one year of mandatory supervised release, with
6  day for day time credit of 286 days.
7  　　　　　I would also advise you, sir, that you do have a
8  right to appeal in these cases.  Before filing the notice
9  of appeal, however, you must file, within thirty days of
10 today's date a motion asking me to allow you to withdraw to
11 withdraw the plea.
12 　　　　　That motion would have to be in writing and set
13 out why I should let you withdraw this plea, and any reason
14 not set out in the writing motion couldn't be used in an
15 appeal.
16 　　　　　If you didn't have the money to hire a lawyer or
17 get a copy of the court reporter's transcript, those will be
18 provided.
19 　　　　　If that motion was allowed, I would then set the
20 case down for trial.  The State could reinstated the
21 original charge of aggravated battery in the 10 CR 16, which
22 would be a Class 2 felony punishable by three or seven years
23 in the Illinois Department of Corrections, followed by two
24 years of mandatory supervised release.

1      And also reinstated all the other counts which are
2 being dismissed in 13 CR 11398, including the two counts
3 relating to possession of firearms by gang members, which if
4 you were convicted of, would subject you to a Class 2, three
5 to ten year sentencing range, and also two years of
6 mandatory supervised release.
7      And if you were convicted of those offenses and
8 sentenced to the penitentiary, they would have to be
9 consecutive sentences as well.
10     If I denied the motion, you would then have thirty
11 days in which to file a notice of appeal.
12     As far as the notice of appeal, if you need
13 assistance from the clerk's office, that will be provided.
14     If you are without funds to hire a lawyer or get a
15 copy of the court reporter's transcript, those will be
16 provided as well.
17     Do you understand that you have those rights?
18   MR. MOSLEY:   Yes.
19   THE COURT: Anything further by either side?
20   MR. NAGELBERG:  No, Judge.
21     Your Honor, just for some housekeeping with
22 regards to the 13 CR 11398, the plea of Mr. Mosley was as to
23 Count 5?
24     THE COURT: Count 5 being no firearm owner's ID card.

- 13 -

```
 1       MR. NAGELBERG:  Is the State nolling the others?
 2       THE COURT:  The other counts are being nollied, all
 3  other counts as part of the agreement.
 4       MR. NAGELBERG:  Thank you very much.
 5          Could I come back next Wednesday with a final fees
 6  petition?
 7       THE COURT:  I won't be here Wednesday, I have a meeting
 8  downtown.
 9       MR. NAGELBERG:  Will you have court in the afternoon?
10       THE COURT:  I'm assuming, if the trains are running.
11       MR. NAGELBERG:  I understand.  I'll try to pick
12  another date.
13          Will you be there the rest of the week?
14       THE COURT:  I will.
15       MR. NAGELBERG:  Is it all right if I stop by?
16       THE COURT:  Yes, that will be fine.
17       MR. NAGELBERG:  Thank you.
18       THE COURT:  Mr. Mosley, mittimus to issue.
19          Good luck to you, sir.
20       MR. MOSELY:  Thank you, sir.
21
22                    (Which were all the proceedings had
23                     in the above-entitled cause on this
24                     date.)
```

```
STATE OF ILLINOIS    )
                     ) SS.
COUNTY OF C O O K    )
```

                    I, Judy A. Lucas, Official Shorthand Reporter of the Circuit Court of Cook County, County Department-Criminal Division, do hereby certify that I reported in shorthand the proceedings had in the above-entitled cause, that I thereafter caused to be transcribed into typewriting the above Report of Proceedings, which I hereby certify is a true and correct transcript of the proceedings before the Judge of said court.

*[Signature]*

Official Shorthand Reporter
Circuit Court of Cook County
License No. 84-001463

Dated: February 5th, 2014

- 15 -